# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MONTILEONE PROPERTIES, LLC, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:24-cv-00962-SPM<br>) |
| AAMCO TRANSMISSIONS, LLC, | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Montileone Properties, LLC ("Montileone Properties") has sued Defendant AAMCO Transmissions, LLC ("AAMCO") for breach of lease and breach of the duty of good faith and fair dealing. Currently pending before this Court is AAMCO's Motion for Leave to Join Additional Parties and File Third-Party Complaint. (ECF No. 19). In its motion, AAMCO seeks to join as additional parties Montileone Industries, Inc. ("Montileone Industries") and Timothy Montileone, the owner and sole member of Montileone Properties. AAMCO also seeks leave to assert claims against Mr. Montileone and Montileone Industries stemming from agreements between AAMCO, Mr. Montileone, and the Montileone entities that AAMCO contends are related to, and inextricably intertwined with, the lease agreement at issue in this case. Montileone Properties opposes AAMCO's motion on grounds that joinder of Mr. Montileone and Montileone Industries is neither necessary nor appropriate, and injecting the additional claims against them will needlessly complicate and expand this otherwise straightforward breach of lease case. (ECF No. 23). After carefully considering the parties' written submissions and the applicable law, for the reasons set forth below, AAMCO's motion will be granted in part and denied in part.

I.      BACKGROUND

On June 6, 2024, Montileone Properties filed this case in the Circuit Court of St. Louis County, Missouri against AAMCO. (ECF Nos. 1-1, 4). Montileone Properties alleges that its principal and sole member, Timothy Montileone, was formerly an AAMCO franchise owner operating a number of AAMCO centers, including one located at 8503 Manchester Road in Brentwood, Missouri (the "Brentwood Property"). Montileone Properties further alleges that a dispute arose between Mr. Montileone and AAMCO in 2018, resulting in the parties' decision to terminate the franchisor-franchisee relationship. According to Montileone Properties' complaint, the dissolution of the franchise relationship involved: (1) an agreement between Mr. Montileone and AAMCO to terminate the franchise (the "Franchise Termination"), (2) AAMCO's acquisition of business assets and equipment used at the franchise locations formerly operated by Mr. Montileone (the "Asset Purchase"), and (3) a lease agreement, executed on October 29, 2018, between Montileone Properties and AAMCO for AAMCO's continued use of the Brentwood Property (the "Lease"). Montileone Properties claims that the Lease required AAMCO to pay an annual base rent of $60,000 with an escalator of 1.75% per year, in addition to the costs of the Brentwood Property's repairs, maintenance, insurance, real estate taxes, and utilities, for a ten-year term.

Montileone Properties alleges that on or about February 1, 2024, it learned that AAMCO vacated the Brentwood Property and Montileone Properties' counsel subsequently sent a demand letter to AAMCO requesting access to the Brentwood Property. AAMCO was allegedly required under the Lease to provide such access within seventy-two hours of receiving written notice and failed to do so. When Montileone Properties gained access to the Brentwood Property on March 26, 2024, "it was apparent that [AAMCO] had made multiple changes to the layout, including the

removal of carpet, walls and an interior window, conversion of an office into part of the garage, and the creation of a transmission build room," according to the complaint. (ECF No. 4 at ¶¶ 19-20). Furthermore, Montileone Properties alleges that the parties entered into the Lease "as part of the larger Franchise Termination," in that:

> [the] Lease and the promised performance thereunder, was specifically called-for in the asset purchase agreement by which the Franchise Termination was effectuated and was critical to the transaction because the stream of revenue it provided, and was to continue providing, constituted the majority of the monetary consideration [Montileone Properties] was to receive from [AAMCO] in exchange for giving up the three (3) franchises.

(*Id.* at ¶¶ 11, 23).

In its complaint, Montileone Properties brings two claims against AAMCO. The first is for breach of the Lease due to AAMCO's vacating of the Brentwood Property and failure to perform the obligations under the Lease. The second claim is for breach of good faith and fair dealing, due to AAMCO allegedly "vacating the [Brentwood] Property and evading the spirit of the [Lease], which was a material inducement to [Montileone Properties] to enter into the Franchise Termination and accompanying asset purchase agreement in 2018." (ECF No. 4 at ¶ 32). Montileone Properties further asserts, "By vacating the [Brentwood] Property and failing to perform under the [Lease], [AAMCO] has not only denied [Montileone Properties] of the expected benefit of the [Lease], but also the expected benefit of the asset purchase agreement and Franchise termination." (*Id.* at ¶ 33).

On July 12, 2024, AACMO removed this case to this Court based on this Court's diversity jurisdiction. (ECF No. 1). On July 19, 2024, AAMCO filed an Answer and several counterclaims. (ECF No. 11). AAMCO alleges that the Lease, the Asset Purchase, and the Franchise Termination were executed simultaneously on October 29, 2018, and that the signing parties intended for the documents to be taken together to represent the full universe of contractual rights and obligations

flowing from the end of the franchise relationship.  AAMCO attached copies of the Asset Purchase and Franchise Termination as exhibits to its counterclaims.[1]  The parties to the Franchise Termination are Mr. Montileone, Montileone Industries, AAMCO, and AAMCO's parent companies; the parties to the Asset Purchase are Mr. Montileone, Montileone Industries, and AAMCO;[2] and the parties to the Lease are Montileone Properties and AAMCO.  (ECF Nos. 11-1, 11-2, 11-3, 11-4).  However, AAMCO alleges that it (or its affiliates) entered into all these agreements "with Timothy Montileone in his individual capacity and/or as the sole owner of the entities he controls and operates," and regards Mr. Montileone and his affiliated entities together as one contractual party. (ECF No. 11 at 10, ¶ 5).

AAMCO brings one counterclaim of set-off and one counterclaim of breach of contract based on indemnification.  AAMCO alleges that, on September 10, 2019, it was named as a co-defendant in a class action against Montileone Industries that has been pending since 2016 in St. Louis County (the "Class Action").  AAMCO asserts that it is entitled, under the Asset Purchase and the Franchise Termination, to indemnification from Mr. Montileone and Montileone Industries for the costs and expenses it has incurred defending the Class Action, and that it has notified these parties of such obligation on numerous occasions.  AAMCO further alleges that the Class Action "was specifically disclosed by [the Montileone entities] and included as a potential liability" for indemnification in the Asset Purchase.  (ECF No. 11 at 14, ¶ 23).  AAMCO asserts that it "relied on this disclosure, and the implication that it would be protected from any costs or expenses that

---

[1] Montileone Properties also attached a copy of the Lease to its complaint.  (ECF No. 4-1).  "[T]he contracts upon which [a] claim rests ... are evidently embraced by the pleadings." *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

[2] An AAMCO affiliate, AAMCO Northwest LLC, was the signing party to the Asset Purchase. However, it assigned to AAMCO its right, title and interest in, *inter alia*, the Asset Purchase. (ECF No. 11-4).

may occur as a result of the [Class] Action, when deciding to enter into [the] Lease" with Montileone Properties. (*Id.* at 12, ¶ 15). Accordingly, AAMCO claims that Mr. Montileone and his affiliates breached the Asset Purchase and Franchise Termination by failing to indemnify AAMCO for costs associated with the Class Action.

This alleged failure to indemnify also gives rise to AAMCO's second claim: set-off. AAMCO alleges that the Asset Purchase allows AAMCO to reduce any amount it owes under the Lease via the following "Offset Right" language: "[AAMCO] may set off any amount to which [AAMCO] may be entitled to receive from [Mr. Montileone or Montileone Industries] under this Agreement against any lease payments due from [AAMCO] to [Mr. Montileone or Montileone Industries], or any of their Affiliates, under any of the Leases." (ECF Nos. 11 at 13, ¶ 16; 11-2 at Section 7.06). Accordingly, AAMCO asserts that, should it be held liable for any lease payments to Montileone Properties, such money damages should be reduced in the amount it is owed in indemnity for the Class Action.

Montileone Properties filed an Answer to Defendant's counterclaims on August 12, 2024. (ECF No. 14). On September 16, 2024, the Court entered a Case Management Order setting a March 28, 2025 deadline for motions for joinder of additional parties or amendment of pleadings. (ECF No. 17).

In the instant motion, AAMCO seeks leave, under Federal Rules of Civil Procedure 14 and/or 20, to join Mr. Montileone and Montileone Industries as parties to the present action and to file a third-party complaint against these parties. AAMCO also attaches a proposed third-party complaint to its motion. As noted above, Montileone Industries and Mr. Montileone—and *not* Montileone Properties—are parties, along with AAMCO, to the Franchise Termination and Asset Purchase Agreements. However, AAMCO asserts that this series of transactions created a

contractual bundle of obligations and rights—interconnected and intended to be treated in whole—between AAMCO and, collectively, the various Montileone entities. In AAAMCO's proposed third-party complaint, AAMCO adds one claim of breach of contract against Mr. Montileone and Montileone Industries for their failure to indemnify AAMCO for costs and expenses incurred from the Class Action, as allegedly required under the Asset Purchase and Franchise Termination. AAMCO also reiterates its allegations regarding its offset right via the Asset Purchase and asserts that the "breach [by Mr. Montileone or his affiliates] of the contractual agreements occurred well before the termination of the…Lease." (ECF No. 19-1 at ¶ 31).

## II. LEGAL STANDARD

On September 16, 2024, the Court entered a Case Management Order setting a March 28, 2025 deadline for motions for joinder of additional parties or amendment of pleadings. (ECF No. 17). Defendant's motion was filed prior to this deadline. Thus, the liberal standard of Federal Rule of Civil Procedure 15(a)(2) governs this motion, rather than the more demanding "good cause" standard of Rule 16(b) that applies to motions for leave to amend made after the relevant deadline set in a scheduling order. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715-16 (8th Cir. 2008). Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Under Rule 14 of the Federal Rules of Civil Procedure, a defendant may implead a third party who is, or may be, liable to the defendant for all or part of the plaintiff's claim. It provides, in relevant part:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1). "Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third person's liability on that claim is in some way dependent upon the outcome of the main claim." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (quoting *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987)). "Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *Id.* "The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *American Zurich Insurance Co. v. Cooper Tire & Rubber Co.*, 512 F .3d. 800, 805 (6th Cir. 2008).

"The right to implead third parties is not automatic and the decision to permit impleader rests within the sound discretion of the trial court." *Nestle Purina PetCare Co. v. Blue Buffalo Co.*, No. 4:14 CV 859 RWS, 2015 WL 5226462, at *3 (E.D. Mo. Sept. 8, 2015) (citing *City of St. Louis v. Cernicek*, et al., No. 4:00-CV-1895, 2001 WL 34134733, at *3 (E.D. Mo. Sept.25, 2001)). "In determining whether impleader is appropriate, a district court must balance the benefits derived from impleader—the benefits of settling related matters in one suit—against possible prejudice to the plaintiffs and the third party defendants, the complication of issues at trial, the merit of the third-party complaint, and any additional expense that would be incurred by the parties." *Id.*

Rule 20(a)(2) provides, in relevant part:

> [P]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The Eighth Circuit has repeatedly recognized that Rule 20 permits "all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Gracey v. Janssen Pharm., Inc.*, No. 4:15-CV-407 CEJ, 2015 WL 2066242, at *3 (E.D. Mo. May 4, 2015) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)). The purpose of Rule 20 is to "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley*, 497 F.2d at 1332-33.

### III.  DISCUSSION

In its motion, AAMCO argues that the Court should grant leave for it to join Mr. Montileone and Montileone Industries as additional parties because they are necessary and indispensable for the proper adjudication of its counterclaims against Montileone Properties. Specifically, AAMCO asserts that the Lease at the center of Montileone Properties' claims was part and parcel of a bundle of agreements between AAMCO and various Montileone entities relating to the dissolution of their franchise relationship. AAMCO asserts that these agreements, were intended to be interpreted together, and they intertwine into a universe of benefits and obligations. Accordingly, AAMCO argues, as the signing parties opposite AAMCO to the Asset

Purchase and the Franchise Termination, Mr. Montileone and Montileone Industries should be brought into the action.

Montileone Properties argues that AAMCO's motion is an attempt to "punish" Mr. Montileone for the present lawsuit by "dragging [Mr. Montileone] and his other entity, Montileone Industries, Inc., into the case and driving up the litigation costs." (ECF No. 23 at 1-2). Montileone Properties also accuses AAMCO of "cluttering the court file with wholly unrelated facts and issues" as a strategic measure in the event of Montileone Properties' "inevitable and forthcoming motion for summary judgment on its breach of lease claim." (*Id.*) Montileone Properties further responds that joining these new parties under Rule 14 would be inappropriate because AAMCO cannot establish that they bear any liability—to either Montileone Properties or AAMCO—pertaining to Montileone Properties' claims. Montileone Properties also points out that Mr. Montileone and Montileone Industries were not parties to the Lease, and any alleged indemnification due to AAMCO would arise under an entirely separate agreement. Accordingly, Montileone Properties argues, any liability on the part of Mr. Montileone and Montileone Industries does not depend on or derive from its claims against AAMCO such that it is appropriate to bring them into the present action.

After careful consideration of the parties' arguments, the Court concludes that AAMCO's motion should be granted in part and denied in part. AAMCO's joinder of the claims against Mr. Montileone and Montileone Industries satisfies the broad Rule 20(a)(2) standard but does not satisfy the Rule 14 standard.

Montileone Properties correctly points out that AAMCO does not allege that the additional parties are liable to AAMCO for all or part of the claims currently pending against AAMCO—in other words, AAMCO does not seem to be advancing an impleader argument

pertaining to the Lease.  However, Montileone Properties' claims are not the only ones in play; AAMCO has asserted two counterclaims against Montileone Properties arising out of the Asset Purchase and Franchise Termination, on the theory that the Lease is only one piece of a larger contract comprised of the three agreements *together*.  AAMCO's proposed new claims derive from the same transactions as AAMCO's original claims: the collection of agreements AAMCO entered into with Montileone Properties, Mr. Montileone, and/or Montileone Industries in effectuating the franchise termination.

The Court also notes that, despite Montileone Properties' protests that the Asset Purchase and Franchise Termination have no relevance to its claims, its own allegations suggest otherwise. In its complaint, Montileone Properties describes the Lease as "specifically called-for" and "critical to" the Asset Purchase and Franchise Termination because the revenue from the Lease "constituted the majority of the monetary consideration" that Montileone Properties would receive in the dissolution of the franchise relationship.  (ECF No. 4 at ¶ 11).  Indeed, Montileone Properties' good faith and fair dealing claim is based on "the spirit of" the Lease being its role as "a material inducement to [Montileone Properties] to enter into the Franchise Termination and accompanying asset purchase agreement in 2018," such that AAMCO's alleged breach of the Lease resulted in Montileone Properties' loss of "the expected benefit of the asset purchase agreement and Franchise [T]ermination."  (ECF No. 4 at ¶ 32).

Accordingly, AAMCO's new claims will involve several questions of law and fact in common with both parties' existing claims, including questions regarding any intertwining obligations among these agreements, the subsequent determination of breach, and the calculation of any damages.  These claims are "reasonably related," and joinder of these claims will promote both judicial economy and convenience to the parties.  *In re Prempro Prods. Liab. Litig.*, 591 F.3d

at 622.  In light of the nexus of issues between both the action's present claims and AAMCO's proposed new claims, there is a substantial efficiency advantage to determining these issues in a single proceeding. The Court does not see any significant complication of issues or prejudice to any party associated with resolving these matters in a single lawsuit, particularly given that AAMCO's motion was timely filed under the deadline agreed to by Montileone Properties.

However, as the Court has noted, Mr. Montileone and Montileone Industries are properly joined as additional parties to AAMCO's counterclaims and not through a third-party complaint. *See US Polymers-Accurez, LLC v. Kane Int'l Corp.*, No. 4:17-CV-2371 RLW, 2018 WL 4491168, at *9 (E.D. Mo. Sept. 19, 2018).  Accordingly, the Court will grant AAMCO time to file an amended pleading against Montileone Properties, Mr. Montileone, and Montileone Industries. *See id.* (citing *Advanced Lipo Dissolve Ctr., LLC*, No. 406-CV-199 CAS, 2007 WL 844822, at *3 (E.D. Mo. Mar. 19, 2007)).

### IV.   CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that AAMCO's Motion for Leave to Join Additional Parties and File Third-Party Complaint (Doc. 19) is **GRANTED in part and DENIED in part**. AAMCO's motion is granted to the extent that AAMCO seeks to add Mr. Montileone and Montileone Industries as additional parties to its counterclaim against Montileone Properties. AAMCO's motion is also granted to the extent it seeks to amend its counterclaim. AAMCO's motion is denied in all other respects.

**IT IS FURTHER ORDERED** that AAMCO must file its amended pleading no later than **September 22, 2025.**

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of September, 2025.